FILED

JUN 1 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHERINE L. BRADFORD                         CV. 08-3099-PK

　　　　　Plaintiff,                          OPINION AND
                                              ORDER

v.

COMMISSIONER, Social
Security Administration,

　　　　　Defendant.

---

PAPAK, Magistrate Judge:

Plaintiff Katherine Bradford challenges the Commissioner's decision denying her

application for disability insurance benefits under Title II of the Social Security Act.  The court

has jurisdiction under 42 U.S.C. § 405(g).  I affirm the Commissioner's decision, for the reasons

set forth below.

## BACKGROUND

Katherine Bradford was born in 1952.  (Tr. 83.)  She completed the eleventh grade but

did not graduate from high school.  *Id.* at 96, 252.  Bradford's work history consists of jobs as a

waitress at several different restaurants. *Id.* at 132-136. She testified that she last worked from November 2002 until the end of January 2003, when she served as a part-time waitress. (Tr. 132, 252-253, 265-266.)

Bradford filed her application for disability benefits in December 2002, alleging March 7, 2001 as her onset date. *Id.* at 83. After the Commissioner of Social Security denied her application initially and upon reconsideration, Bradford requested a hearing before an administrative law judge (ALJ). *Id.* at 45. The ALJ held a hearing in December 2005 and took testimony from Bradford, who was represented by an attorney, and from a vocational expert. *Id.* at 250. In November 2006, the ALJ held a supplemental hearing following an extended physical capacity examination of Bradford. *Id.* at 276. In January 2007, the ALJ issued a decision finding Bradford not disabled because she could perform the requirements of representative occupations such as an office helper, rental storage clerk or companion. *Id.* at 26.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Id.* at 20-27. At step one, the ALJ found that Bradford had not engaged in substantial gainful activity during the period from her alleged onset date of March 7, 2001 through March 31, 2006, the date she was last insured. *Id.* at 20. At step two, the ALJ found that Bradford's epicondylitis and psoriatic arthritis constituted a severe combination of impairments. *Id.* At step three, the ALJ found that Bradford's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* at 23. At step four, the ALJ found that Bradford was not able to perform her past relevant work. *Id.* at 26. The ALJ concluded at step five, however, that Bradford could perform other jobs that exist in significant numbers, and accordingly concluded that she was not disabled. *Id.* at 26-27. Bradford filed this

Page 2 - OPINION AND ORDER

appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Bradford contends the ALJ erred in several respects. Specifically, Bradford argues that the ALJ erred in failing to find that fibromyalgia constituted a severe impairment and in neglecting her duty to develop the record concerning fibromyalgia. Bradford also argues that the ALJ improperly rejected her testimony regarding the severity of her symptoms. Bradford further

Page 3 - OPINION AND ORDER

asserts that the ALJ improperly discounted the opinion of her treating physician and failed to account for lay witness testimony concerning the severity of her symptoms. Finally, she argues that the ALJ erred at step five because the hypothetical to the vocational expert improperly excluded the limitations identified by her treating physician and described in her testimony.

## I.    Severity Determination

An ALJ can find an impairment "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted). Before an ALJ can conclude that a claimant's symptoms affect the claimant's ability to work, "medical signs or laboratory findings . . . must show the existence of a medical impairment." 20 C.F.R. § 404.1529(b); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4, 1996 SSR LEXIS 11, at *3 (July 2, 1996);[1] *see also* 20 C.F.R. § 404.1508.

Here, Bradford's treating physician, Dr. Gilmour diagnosed Bradford with fibromyalgia, a rheumatic disease with symptoms that include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance." *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). While no laboratory tests exist to confirm the diagnosis, the American College of Rheumatology has issued a set of diagnostic criteria. *Id.* The criteria are: 1) patient reports of a history of pain in all four quadrants of the body, as well as axial skeletal pain, for a period of at least three months and 2) patient reports of pain in at least eleven of

---

1  Courts give "some deference" to Social Security Rulings (SSRs) "as long as they are consistent with the Social Security Act and regulations." *Ukolov*, 420 F.3d at 1005, n.2. The Ninth Circuit has held that SSR 96-4p "is consistent with the purpose of Title II and XVI of the Social Security Act to provide financial assistance to those who are disabled." *Id.*

eighteen points upon digital palpitation. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004); *see also* Frederich Wolfe, et al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia, 33 Arthritis and Rheumatism (No. 2) 160, 171 (February 1990), http://www.rheumatology.org/publications/classification/fibromyalgia/fibro.asp.

The ALJ considered the American College of Rheumatology diagnostic criteria for fibromyalgia and concluded that "the record does not include substantial findings by a medical practitioner in support of that diagnosis." (Tr. at 23.) The ALJ also noted that Dr. Gilmour's treatment notes indicated that Bradford reported that she had seen a rheumatologist who told her nothing was wrong with her. *Id.* at 23, 212. The record does not contain any other reference to or evidence from that rheumatologist.

The record reflects that Dr. Gilmour considered the diagnostic criteria when he diagnosed Bradford with fibromyalgia. Doctor Gilmour's treatment notes indicate that he found Bradford had "multiple trigger points." *Id.* at 196, 212. Gilmour, however, did not note that Bradford had at least eleven trigger points, nor do his treatment records reflect that Bradford reported pain in all five parts of the body for three months or more. *Id.* at 191, 193, 196, 208, 212. The ALJ could rationally conclude from this record that the diagnostic evidence was weak.

Bradford argues that the ALJ had a duty to develop the record by contacting Dr. Gilmour to determine the basis of his opinion regarding her fibromyalgia. "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ had no duty to develop the record

Page 5 - OPINION AND ORDER

when he disagreed with a medical report's finding that claimant could be exaggerating symptoms and still produce a valid test result ). Here, the ALJ appears to have discounted Dr. Gilmour's opinion because the medical record did not reflect the presence of the specific diagnostic criteria for fibromyalgia. The evidence was not ambiguous, however, nor was it insufficient with regard to the ALJ's ultimate disability determination. I therefore conclude that the ALJ did not have a duty to recontact Dr. Gilmour.

More importantly, even if the ALJ erred when she found Bradford's fibromyalgia non-severe, an ALJ's erroneous finding that an impairment is non-severe constitutes harmless error if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's impairment in the severity determination was harmless where the ALJ considered any limitations posed by the impairment in the analysis of whether the claimant could perform past relevant work); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (ALJ's failure to include an impairment in step two could only prejudice claimant at other steps because step two was resolved in the claimant's favor).

Here, the ALJ resolved step two in Bradford's favor when the ALJ found that Bradford's epicondylitis and arthritis constituted a severe combination of impairments. (Tr. 20.) Moreover, the ALJ did not reject Bradford's pain symptom testimony for lack of an underlying medical impairment. *Id.* at 24-25. As a result, even if the ALJ erred when she concluded that Bradford's fibromyalgia was non-severe, that error was harmless if the ALJ properly considered all of Bradford's limitations at the other steps of the sequential process. *See Lewis*, 498 F.3d at 911. I address that issue in the sections that follow.

Page 6 - OPINION AND ORDER

## II.  Claimant Credibility

Once a claimant produces medical evidence of an underlying impairment, an ALJ may

not reject the claimant's subjective complaints based solely on a lack of medical evidence to fully

corroborate the alleged severity of pain. *Robbins v. Soc. Sec. Admin.* 466 F.3d 880, 883 (9th Cir.

2006); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Unless the record has affirmative

evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so. *Carmickle v.*

*Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must state specifically

the facts in the record that lead to her conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1208

(9th Cir. 2001). In other words, the ALJ's credibility findings must be sufficiently specific to

"permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Tommasetti*, 533 F.3d at 1039 (citation omitted).

Here, the ALJ found that Bradford produced objective medical evidence of her

impairments. (Tr. 22.) In addition, the ALJ's review of the record did not affirmatively find that

Bradford was malingering. Thus, the ALJ was required to set forth "clear and convincing"

reasons to reject Bradford's testimony. Bradford argues that the ALJ's rejection of her testimony

did not meet that standard.

### A.  Inconsistent Effort During Testing

An ALJ may support an adverse credibility determination with evidence that the claimant

failed to give maximum or consistent effort during a physical capacity examination. *Thomas,*

278 F.3d at 959 (ALJ properly partly relied on claimant's inconsistent effort and self-limitation

during two physical capacity examinations as one of several reasons to reject the claimant's pain

testimony). Here, as in *Thomas*, the ALJ's adverse credibility determination relied in part on the fact that the results of a physical capacity examination revealed that Bradford gave unreliable input and was not aware of her limitations and abilities. (Tr. at 24.)

The record supports the ALJ's finding. Two tests performed during the physical capacity examination revealed that Bradford put forth "questionable" or "sub maximal" effort during grip strength testing. *Id.* at 218. In addition, Bradford provided two responses describing her ability to perform certain tasks that contradicted her responses regarding her ability to perform similar tasks. *Id.* The examiners concluded that Bradford perceived her abilities to be lower than they actually were. *Id.* Although Bradford vigorously argues that these results have no bearing on her credibility, the results, at minimum, show that Bradford's account of her symptoms was not completely reliable. Thus, I conclude that the ALJ properly relied on these results as partial support for her adverse credibility finding. *See Thomas*, 278 F.3d at 959.

## B.    Medical Evidence

Although an ALJ may not reject a claimant's pain testimony based solely on a lack of medical evidence, an ALJ may consider the medical evidence as one of many factors relevant to determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Thus, the ALJ may consider the extent to which the record corroborates the claimant's reports of disabling pain. *Id.*

Here, the ALJ found that Bradford's pain testimony was disproportionate to the objective findings in the medical record. Specifically, the ALJ accurately noted that x-rays of Bradford's hands did not reveal any problems with bone density, joint spaces or soft tissues. (Tr. 25, 213.) Bradford argues that the ALJ made inconsistent findings when she concluded that Bradford's

Page 8 - OPINION AND ORDER

psoriatic arthritis was a severe impairment but noted that the x-ray findings were negative. The

ALJ, however, accepted other evidence of Bradford's arthritis when she noted that a consultive

exam revealed that Bradford had psoriatic nail changes in her hands and feet. *Id.* at 22, 168.

Thus, the ALJ could rationally conclude that, while Bradford' psoriatic arthritis contributed to

her severe impairment, the negative x-rays suggested that the condition was not as disabling as

Bradford claimed.[2] *Rollins*, 261 F.3d at 857.

## C.      Frequency and Nature of Treatment

If a claimant complains about disabling pain but fails to seek treatment, an ALJ may

consider that failure as a basis for finding the complaint unjustified or exaggerated. *Orn v.*

*Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). Failure to seek relief from pain is probative of

credibility because "a person's normal reaction is to seek relief from pain, and because modern

medicine is often successful in providing some relief." *Id.*; *see also Burch*, 400 F.3d at 681 (ALJ

properly discredited the claimant's back pain testimony when claimant did not have any

treatment for three months and the existing treatment did not include surgery, chiropractic care

or physical therapy). If, however, the claimant provides evidence of a good reason for failing to

seek treatment, the ALJ cannot reject the claimant's symptom testimony on that ground. *Smolen*,

80 F.3d at 1284 (claimant's failure to take medication not a clear and convincing reason to reject

her testimony where she testified that she had no insurance and could not afford treatment).

Here, the ALJ discounted Bradford's symptom testimony in part because Bradford's acute

---

2  Bradford argues that the ALJ had a duty to develop the record by requesting the records of the
doctor who originally diagnosed Bradford with psoriatic arthritis. An ALJ's duty to develop
the record arises "only when there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th
Cir 2001). Here, the ALJ accepted unambiguous evidence that Bradford suffered from
psoriatic arthritis. (Tr. at 22.) I therefore conclude the ALJ had no duty to contact the doctor
who originally diagnosed Bradford with that condition.

periods of illness lasted only a few months. *Id.* at 25. The record shows that, on three occasions, treatment alleviated Bradford's symptoms within one month. Before her alleged onset date, Bradford saw Dr. Webb, her treating physician at the time, in November 1998 and February 1999 for pain symptoms that improved within a month. (Tr. 157-161.) She saw Dr. Gilmour, in January 2004, for increased pain, which resolved within one month when treated with Prednisone. *Id.* at 191-193. Moreover, while Bradford's symptoms prompted other visits to physicians and the record does not reflect that her symptoms resolved, those visits were several months apart . *Id.* at 184-85, 189, 208-212. Finally, Bradford reported that she had severe pain "on occasion" and that it lasted "sometimes a few days, sometimes months." *Id.* at 122, 198. She also testified that she took Prednisone and Vicodin when her pain "flared up" everywhere at once. *Id.* at 258. The ALJ could rationally conclude from this evidence that Bradford's symptoms were not consistently disabling.

The ALJ also noted that Bradford improved after treatment with Prednisone. *Id.* at 25. Bradford argues that the ALJ failed to consider that she was unable to continue on high doses of Prednisone. Bradford testified that Prednisone and Vicodin helped with her symptoms but she didn't like the way she felt when taking them. *Id.* at 259. The record also shows that Bradford reported having palpitations while on Prednisone, but they "almost" resolved at a lower, twenty milligram dose. *Id.* at 191. Her physician indicated that she should reduce the dose to ten milligrams and then five milligrams over a few months, but nothing indicates whether Bradford tolerated the lower doses. *Id.* at 189, 191. I therefore conclude that the ALJ erred when she failed to take into account Bradford's intolerance to Prednisone in her finding that it improved Bradford's symptoms.

Finally, the ALJ found that the treatment Bradford received was "generally conservative, primarily relying on NSAIDS (non-steroidal anti-inflammatory drugs) and low dosage Vicodin." *Id.* at 25. The record shows that Bradford initially took only Advil for her pain and did not receive a prescription for Vicodin until after her application for disability was denied. *Id.* at 52, 123, 185. In addition, with the exception of the short course of a high dose of Prednisone, Bradford's prescribed treatment consisted of a prescription for anti-inflammatory drugs and for Vicodin at a dosage of 5 milligrams per tablet. *Id.* at 185, 190, 192, 194-195, 198, 209, 211. Although the prescriptions support Bradford claims of pain, the ALJ could rationally conclude that the low dosage amounted to conservative treatment. *See Burch*, 400 F3d at 691. Thus, the ALJ properly relied on this evidence as partial support for her conclusion that Bradford's pain was not as severe as she had claimed. *See Tommasetti*, 533 F.3d at 1039 (ALJ permissibly inferred from claimant's conservative treatment regime that claimant's pain was not as severe as he reported).

## D.    Daily Activities

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted). Rather, a claimant's daily activities may support an adverse credibility finding where the "claimant engages in numerous daily activities involving skills that could be transferred to the workplace" or where the activities are inconsistent with claimant's alleged symptoms. *Orn*, 495 F.3d at 639. Thus, in *Burch*, the Ninth Circuit concluded that the ALJ properly relied on the claimant's ability to care for her personal needs, cook, clean, shop, interact

Page 11 - OPINION AND ORDER

with her boyfriend and manage her own finances as a reason to partially reject the claimant's pain testimony. 400 F.3d at 680-681. The ALJ, however, cannot ignore evidence in the record in reaching the conclusion that the claimant's activities undermine her accounts of disabling pain. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (ALJ erred in finding that the claimant's activities undermined her pain testimony when considerable evidence in the record detracted from that conclusion).

· Here, the ALJ found that Bradford's activities undermined her claims of debilitating symptoms but in some cases disregarded how pain affected Bradford's ability to carry on those activities. (Tr. 25.) The ALJ accurately noted that Judy Pariera, Bradford's friend, indicated that Bradford participated in social activities, took walks, and engaged in fishing, hunting, camping, arts and crafts and some yard work. *Id.* at 111, 114-115. Pariera, however, did not indicate how often Bradford engaged in those activities, or for how long. In addition, another witness, Aleta Milam, indicated that Bradford no longer hunted, fished or did arts and crafts. *Id.* at 155. Similarly, although the ALJ relied on Pariera's report that Bradford prepared "common meals" for herself and others daily, and that these meals were "very good," she did not consider Bradford's statement that she used the microwave for cooking. *Id.* at 116-117, 259.

Several of the other activities that ALJ noted, however, contradicted Bradford's account of her symptoms. Bradford testified that she was unable to type but earlier told an examining physician that she had no difficulty with typing or writing. *Id.* at 166, 260. Similarly, Bradford reported that she could drive for up to two hours at a time but testified at the hearing that she could not sit for more than half an hour at a time and that driving caused her pain. *Id.* at 166, 255, 260. Finally, Bradford testified that she could not lift a gallon of milk without pain but

Page 12 - OPINION AND ORDER

reported that she did the grocery shopping for her household. *Id.* at 127, 262. The ALJ could rationally conclude from this evidence that Bradford's limitations were not as severe as she claimed.

In summary, the record supported most of the ALJ's conclusions regarding Bradford's veracity. Thus, because the ALJ cited several clear and convincing reasons to discount Bradford's testimony, supported by substantial evidence in the record, the ALJ's unsupported factual determinations amounted to harmless error. *Carmickle*, 554 F.3d at 1163. I therefore do not disturb the ALJ's credibility finding.

## III.   Physician Opinion

In the face of conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. *Thomas*, 278 F.3d at 956-957. "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." *Carmickle*, 533 F.3d at 1164. An ALJ , however, may reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons" supported by substantial evidence in the record. *Id.* (citation omitted). If other evidence in the record contradicts the opinion, an ALJ may reject the opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citations omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

The ALJ must consider not only the treating physician's clinical findings and interpretation of test results but also his subjective judgments. *Lester*, 81 F.3d 821, 833 (9th Cir.

1995).  Several factors determine the weight the ALJ should give to a physician opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's area of specialty.  *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)).

Here, the ALJ's residual functional capacity determination rejected Dr. Gilmour's opinion that Bradford would have to lie down several times per day to relieve pain, would have unpredictable absenteeism from work and at most could work three days per week for two to three hours per day.  *Id.* at 25, 187-188.  Moreover, the ALJ's ultimate disability determination rejected Dr. Gilmour's opinion that Bradford's fibromyalgia would prevent her from engaging in any "meaningful work" for the duration of her life.  *Id.* at 27, 203.  Bradford argues that the ALJ improperly rejected Dr. Gilmour's opinions and substituted her own opinion in their place.

Doctor Gilmour's opinions are inconsistent with the opinion of the state agency reviewing physician, who indicated that Bradford had the physical capacity to perform light work.  *Id.* at 172-181; s*ee Widmark v. Barnhart*, 454 F.3d 1063, 1066-1067 (9th Cir. 2006) (a nonexamining physician opinion sufficed to establish a conflict among the medical opinions, although it did not by itself constitute substantial evidence to justify the rejection of a treating physician opinion). Thus, I review the ALJ's decision to determine whether she set forth specific and legitimate reasons to reject Dr. Gilmour's opinion and whether those reasons were supported by substantial evidence in the record.

"[T]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957  (ALJ

Page 14 - OPINION AND ORDER

properly rejected physicians' opinions regarding claimant's ability to work because the physicians

changed their opinions without offering any explanation for the change). Moreover, an ALJ may

reasonably discount a physician opinion if it was based on the claimant's less than credible

statements. *Bray*, 554 F.3d at 1228 (ALJ reasonably rejected a treating physician's opinion

because it was based on the claimant's discredited statements); *Tommasetti*, 533 F.3d at 1041

(ALJ's adverse credibility finding regarding claimant supported the rejection of the treating

physician opinion that was based "to a large extent" on a claimant's self-reports).

Here, at the conclusion of the first hearing, the ALJ found the record inadequate to

support a decision and ordered a physical capacity examination to help her ascertain Bradford's

limitations. (Tr. 271.) Following the outcome of that exam, the ALJ rejected Dr. Gilmour's

opinion that Bradford was completely disabled by fibromyalgia because the record contained

little evidence to support his fibromyalgia diagnosis. *Id.* at 23. In addition, the ALJ noted that

Dr. Gilmour opined that Bradford could not engage in any meaningful work for the duration of

her life but also indicated Bradford could perform a reduced range of light work.[3] The ALJ also

found that the limitations identified by Dr. Gilmour "simply parroted the claimant's self-

reporting, rather than relying on objective findings." *Id.* at 25. As a result, the ALJ gave more

weight to the physical capacity examination findings. *Id.* at 24.

Substantial evidence in the record supports the ALJ's findings. As noted above, the ALJ

properly concluded that little evidence supported Dr. Gilmour's fibromyalgia diagnosis. In

addition the record shows that Dr. Bradford made inconsistent findings regarding Bradford's

limitations and relied, at least in part, on Bradford's self reports. Bradford initially saw Dr.

---

3   Although the ALJ does not explicitly cite this as an additional reason for giving Dr. Gilmour's
    opinion less weight, I may properly draw this inference. *See Magallanes v. Bowen*, 881 F.2d
    747, 755 (9th Cir. 1989)

Page 15 - OPINION AND ORDER

Gilmour in July 2003 to obtain an evaluation for her disability claim. *Id.* at 196. During that visit, Bradford stated that she could not work more than three to three and a half hours per day, three days per week, could not work more than a half hour on some days, and had to lie down three to four times per day due to pain. *Id.* Doctor Gilmour completed forms during that first visit, which mirrored Bradford's oral claims, noting that Bradford could work three days per week, for two to three hours per day, would have unpredictable absences, and would have to lie down several times per day. *Id.* at 187-188, 196. Following Bradford's next visit, in January 2004, however, Dr. Gilmour opined that her work limitations were merely infrequent lifting up to 20 pounds, minimal repetitive use of hands and limited sitting and standing. *Id.* at 206.

The ALJ cited specific and legitimate reasons to discount Dr. Gilmour's opinions. Substantial evidence in the record supports those reasons. Accordingly, I conclude that the ALJ properly discounted Dr. Gilmour's opinion.

## IV.    Lay Witness Testimony

"[A]n ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. The ALJ cannot disregard lay witness testimony "without comment." *Id.*. Rather, if an ALJ disregards the testimony of a lay witness, the ALJ must provide specific reasons that are germane to each witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Moreover, "where an ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Robbins*, 466 F.3d at 885 (citation omitted).

Here, although Bradford's friend, Aleta Milam, wrote a letter describing how Bradford's

pain affected her activities, the ALJ did not discuss the letter as part of her disability determination. Bradford argues that the ALJ improperly rejected the evidence offered by Milam. Specifically, Bradford argues that the ALJ failed to take into account Milam's statements that 1) Bradford's condition continually deteriorated; 2) Bradford needed a shopping cart to help her shop and could only tolerate shopping for an hour; 3) Bradford could not work even after reducing her hours to half days; and 4) Bradford's physical disabilities took a toll on her mentally.

I conclude that an ALJ who fully credited Milam's testimony would not have reached a different disability determination than the ALJ did here. First, Milam did not in fact state that Bradford's condition continually deteriorated, but rather indicated that Bradford was once physically active but could no longer engage in her former activities. (Tr. 155.) Second, the ALJ accounted for Bradford's difficulties with walking or standing when she limited her to jobs that offered a sit/stand option, allowing her to change position every half hour. *Id.* at 24; *see Cornett v. Massanari*, No. 00-1412, 2001 U.S. Dist. LEXIS 10933, at \*35 (D. Or. June 22, 2001) (finding that, if the ALJ credited a physician's opinion that claimant had significant walking limitations, that would not necessarily preclude jobs that had an option to sit or stand). Third, the ALJ also accounted for the fact that Bradford could not perform the demands of her former waitressing job when she concluded that Bradford was unable to perform her past relevant work. (Tr. 26.) Fourth, although Milam said that Bradford found her disabilities depressing, no medical evidence in the record indicates that Bradford suffered from depression or any other mental impairment.

In addition, even if the ALJ credited all of Milam's testimony, the vocational expert

testimony reflected that Bradford could perform available jobs. The vocational expert identified

two sedentary jobs, charge account clerk and circulation clerk, that Bradford could perform

despite her lifting limitations, limited education, need to alternate sitting and standing and need

to avoid repetitive hand motions. *Id.* at 269-270. There were 37,000 charge account clerk jobs

in the national economy and 2,300 in the regional economy and 64,500 circulation clerk jobs

nationally and 1,200 regionally. *Id.* at 270. "Sedentary work involves lifting no more than 10

pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

tools." 20 C.F.R. § 404.1567(a). Thus, although Milam stated that Bradford could not lift her

saddle or hold up a rifle or take care of her long hair, an ALJ who credited this evidence would

still find that Bradford was not disabled.

Finally, I note that, although Milam's statement corroborated portions of Bradford's pain

testimony, the ALJ cited several compelling reasons for finding that Bradford was less than

credible. Among these reasons were the objective results of a physical capacity examination,

which revealed that Bradford gave unreliable input and was not aware of her limitations and

abilities. Therefore, based on the foregoing, I conclude that the ALJ committed harmless error

when she failed to discuss Milam's testimony.

## V.    Hypothetical Posed to the Vocational Expert

The hypothetical posed to a vocational expert must only include those limitations

supported by substantial evidence. *Robbins*, 466 F.3d at 886. "Conversely, an ALJ is not free to

disregard properly supported limitations." *Id.* Here, Bradford argues that the ALJ posed an

incomplete hypothetical to the vocational expert because she wrongly excluded limitations

identified by Dr. Gilmour and by Bradford's own testimony. As discussed above, the ALJ

properly discounted Dr. Gilmour's opinion and Bradford's pain testimony. As a result, the ALJ did not err when she excluded the limitations identified by Dr. Gilmour and Bradford from the hypothetical posed to the vocational expert. Accordingly, I uphold the ALJ's disability determination.

## CONCLUSION

Based on the foregoing, the ALJ's decision to deny Bradford benefits was reasonable and supported by substantial evidence in the record. I therefore uphold the Commissioner's decision. IT IS SO ORDERED.

Dated this 10th day of June, 2009.

Honorable Paul Papak
United States Magistrate Judge